**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GARY POWERS | ) | CASE NO. |
| 1009 Robinson Drive | ) | |
| Springfield, Ohio 45506, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| ADECCO USA, INC. | ) | |
| 11000 State Route 347 | ) | **JURY DEMAND ENDORSED** |
| East Liberty, Ohio 43319 | ) | **HEREIN** |
| | ) | |
| **Serve Also:** | ) | |
| Adecco USA, Inc. | ) | |
| c/o CT Corporation System | ) | |
| 4400 Easton Commons Way | ) | |
| Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| HONDA OF AMERICA MFG., INC. | ) | |
| 11000 State Route 347 | ) | |
| East Liberty, Ohio 43319, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Gary Powers, by and through undersigned counsel, as his Complaint against

Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Powers is a resident of the city of Springfield, Clark County, Ohio.

2. At all times herein, Powers was acting in the course and scope of his employment.

3. Honda is a domestic corporation whose principal place of business is 24000 Honda Parkway,

   Marysville, Union County, Ohio 43040.

4. Adecco is a foreign corporation that does business at 11000 State Route 347, East Liberty, Logan County, Ohio 43319 ("East Liberty Location").

5. All of the material events alleged in this Complaint occurred in Logan County.

6. Personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and (4).

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Powers is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

8. All material events alleged in this Complaint occurred in Logan County, Ohio.

9. This Court has supplemental jurisdiction over Powers's state law claims pursuant to 28 U.S.C. § 1367 as Powers's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

11. Within 300 days of the conduct alleged below, Powers filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00611 against Adecco ("Adecco EEOC Charge").

12. Powers dually filed the Adecco EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

13. Within 300 days of the conduct alleged below, Powers filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00620 against Honda ("Honda EEOC Charge").

14. Powers dually filed the Honda EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

15. On or about November 23, 2021, the EEOC issued a Notice of Right to Sue letter to Powers regarding the Adecco EEOC Charge.

16. On or about November 23, 2021, the EEOC issued a Notice of Right to Sue letter to Powers regarding the Honda EEOC Charge.

17. Powers received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

18. Powers has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

19. Powers has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

20. Adecco is an employment agency that contracts with Honda.

21. In or about October 2016, Adecco hired Powers to work at the East Liberty Location.

22. The East Liberty Location is owned by Honda.

23. Adecco paid Powers.

24. Adecco provided Powers with a uniform, which had a Honda logo.

25. Powers's work was supervised by employees of both Adecco and Honda.

26. Adecco employed Powers.

27. Honda employed Powers.

28. Both Defendants employed Powers.

29. Defendants were, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during

each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

30. As of October 2017, Powers was employed by Defendants for at least 12 months and had at least 1,250 hours of service with Defendants and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

31. Powers is African American.

32. Powers was the only African American employee in his department.

33. On more than one occasion, Powers witnessed coworkers using the word "nigger" (hereinafter, the "N-word") at work.

34. The N-word is an offensive racial slur about African Americans.

35. When Powers witnessed coworkers using the N-word, he reported the incidents to Bradley Bennett.

36. Bennett was Powers's team lead.

37. Bennett was employed by Adecco.

38. Bennett is Caucasian.

39. Bennett was not involved in the decision to hire Powers.

40. Defendants have a policy against discrimination ("Discrimination Policy").

41. Defendants' Discrimination Policy precludes retaliation against employees who complain about discrimination.

42. Alternatively, retaliation against employees who complain about discrimination is permitted by Defendants.

43. Defendants' Discrimination Policy precludes intimidation against employees who complain about discrimination.

44. Alternatively, intimidation against employees who complain about discrimination is permitted by Defendants.

45. Defendants' Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

46. Defendants' Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

47. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by Defendants.

48. Defendants' Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

49. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by Defendants.

50. Using the N-word at work violates the Discrimination Policy.

51. Defendants has a policy to investigate reports of violations of its Discrimination Policy.

52. An investigation should include interviewing the complainant.

53. An investigation should include interviewing the subject of the complaint.

54. An investigation should include interviewing the subject of the reported discrimination.

55. An investigation should include interviewing witnesses to the reported discrimination.

56. An investigation should include getting a written statement from the complainant.

57. An investigation should include getting a written statement from the subject of the complaint.

58. An investigation should include getting a written statement from the subject of the reported discrimination.

59. In response to Powers's reports of employees using the N-word, Defendants did not interview Powers.

60. In response to Powers's reports of employees using the N-word, Defendants did not interview the individuals who used the N-word.

61. In response to Powers's reports of employees using the N-word, Defendants did not interview witnesses.

62. In response to Powers's reports of employees using the N-word, Defendants did not get a written statement from Powers.

63. In response to Powers's reports of employees using the N-word, Defendants did not get a written statement from witnesses.

64. Defendants did not investigate Powers's reports of employees using the N-word.

65. Defendants did not give anyone a verbal warning in response to Powers's reports of employees using the N-word.

66. Defendants did not give anyone a written warning in response to Powers's reports of employees using the N-word.

67. Defendants did not give anyone a final warning in response to Powers's reports of employees using the N-word.

68. Defendants did not give anyone a suspension in response to Powers's reports of employees using the N-word.

69. Defendants did not give anyone a demotion in response to Powers's reports of employees using the N-word.

70. Defendants did not give anyone a termination in response to Powers's reports of employees using the N-word.

71. Defendants did not discipline anyone at all in response to Powers's reports of employees using the N-word.

72. The use of the N-word was severe.

73. The use of the N-word was pervasive.

74. The use of the N-word created a hostile work environment on the basis of race.

75. In or about August 2020, Powers's manager, Jimmy Marsh, accused Powers of riding on a cart unsafely ("Accusation").

76. Marsh is Caucasian.

77. Marsh was a Honda employee.

78. Marsh was not involved in the decision to hire Powers.

79. The Accusation was not true.

80. Powers's coworker, Wesley Dorn, had been the one riding on a cart unsafely.

81. Dorn is Caucasian.

82. Dorn and Powers had the same job title.

83. Dorn was not given a verbal warning for operating a cart unsafely.

84. Dorn was not given a written warning for operating a cart unsafely.

85. Dorn was not given a final warning for operating a cart unsafely.

86. Dorn was not given a suspension for operating a cart unsafely.

87. Dorn was not given a demotion for operating a cart unsafely.

88. In response to the Accusation, Powers told Marsh that Dorn was the one operating the cart unsafely.

89. Powers told Marsh that he believed Marsh was targeting him for discipline due to his race.

90. Although Marsh conceded that Dorn had been the one riding the cart, Marsh gave Powers a write-up anyway ("Write-Up").

91. The Write-Up was an adverse action.

92. Marsh stated that the reason for the Write-Up was that Marsh felt "intimidated" by Powers during their conversation about discrimination.

93. A common racist stereotype about African American men is that they are "intimidating."

94. Marsh gave Powers the Write-Up in retaliation for his opposing discrimination.

95. Marsh gave Powers the Write-Up because of his race.

96. Marsh gave Powers the Write-Up intentionally.

97. Marsh gave Powers the Write-Up willfully.

98. In or about September 2020, Powers was experiencing a stomachache, chills, and sweating ("Illness").

99. Because of Powers's Illness, Powers left work early.

100. Defendants have a hotline for employees to call off work if they are sick ("Hotline").

101. When Powers left work early, he called the Hotline to report that he was sick.

102. In or about September 2020, Powers had available time off.

103. Defendants did not provide any paperwork for Powers to fill out when he called off for the Illness.

104. When Powers returned to the East Liberty Location after his Illness, his access card to enter the building did not work.

105. When Powers learned that his access card did not work, Powers spoke with a security guard.

106. The security guard contacted an Adecco representative, Lindy Hall.

107. Hall is Caucasian.

8

108. Hall was not involved in the decision to hire Powers.

109. Hall stated that Adecco was ending Powers's assignment.

110. On or about September 15, 2020, Adecco terminated Powers's employment.

111. On or about September 15, 2020, Honda terminated Powers's employment.

112. On or about September 15, 2020, Defendants terminated Powers's employment ("Termination").

113. On or about September 15, 2020, Hall stated that the reason for Powers's termination was that he did not call off when he went home sick ("Stated Reason").

114. The Stated Reason had no basis in fact.

115. The Stated Reason was pretextual.

116. Defendants has a progressive disciplinary policy ("Discipline Policy").

117. A verbal warning is the lowest level of discipline in the Discipline Policy.

118. Powers did not receive a verbal warning before the Termination.

119. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

120. Powers did not receive a written warning before the Termination.

121. A termination is the highest level of discipline in the Discipline Policy.

122. Defendants knowingly skipped progressive disciplinary steps in terminating Powers.

123. Defendants knowingly terminated Powers's employment.

124. Defendants knowingly took an adverse employment action against Powers.

125. Defendants knowingly took an adverse action against Powers.

126. Defendants intentionally skipped progressive disciplinary steps in terminating Powers.

127. Defendants intentionally terminated Powers's employment.

128. Defendants intentionally took an adverse employment action against Powers.

129. Defendants intentionally took an adverse action against Powers.

130. Defendants knew that skipping progressive disciplinary steps in terminating Powers would cause Powers harm, including economic harm.

131. Defendants knew that terminating Powers would cause Powers harm, including economic harm.

132. Defendants willfully skipped progressive disciplinary steps in terminating Powers.

133. Defendants willfully terminated Powers's employment.

134. Defendants willfully took an adverse employment action against Powers.

135. Defendants willfully took an adverse action against Powers.

136. On or about September 15, 2020, Defendants terminated Powers's employment because of his race.

137. On or about September 15, 2020, Defendants terminated Powers's employment because he opposed race discrimination.

138. As a direct and proximate result of Defendants' conduct, Powers suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE DISCRIMINATION, IN VIOLATION OF TITLE VII

139. Powers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. During his employment with Defendants, Powers witnessed coworkers using the N-word at work on multiple occasions.

141. Powers reported that coworkers used the N-word at work.

142. Defendants took no action to discipline the individuals who used the N-word at work.

143. Defendants condoned, tolerated, and ratified this harassing conduct.

144. This harassing conduct was severe and/or pervasive.

145. This harassing conduct was offensive to Powers.

146. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Powers.

147. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Powers.

148. As a direct and proximate result of Defendants' conduct, Powers suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT II: HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE DISCRIMINATION, IN VIOLATION OF R.C. § 4112.01 *et seq.***

149. Powers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

150. During his employment with Defendants, Powers witnessed coworkers using the N-word at work on multiple occasions.

151. Powers reported that coworkers used the N-word at work.

152. Defendants took no action to discipline the individuals who used the N-word at work.

153. Defendants condoned, tolerated, and ratified this harassing conduct.

154. This harassing conduct was severe and/or pervasive.

155. This harassing conduct was offensive to Powers.

156. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Powers.

157. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Powers.

158. As a direct and proximate result of Defendants' conduct, Powers suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

159. Powers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

160. Throughout his employment, Powers was fully competent to perform his essential job duties.

161. Defendants treated Powers differently than other similarly-situated employees based on his race.

162. Defendants violated Title VII by discriminating against Powers due to his race.

163. On or about September 15, 2020, Defendants terminated Powers without just cause.

164. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

165. Defendants terminated Powers based on his race.

166. Defendants violated Title VII when they terminated Powers based on his race.

167. As a direct and proximate result of Defendants' conduct, Powers has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

168. Powers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169. Throughout his employment, Powers was fully competent to perform his essential job duties.

170. Defendants treated Powers differently than other similarly-situated employees based on his race.

171. Defendants violated 42 U.S.C. § 1981 by discriminating against Powers due to his race.

172. On or about September 15, 2020, Defendants terminated Powers without just cause.

173. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

174. Defendants terminated Powers based on his race.

175. Defendants violated 42 U.S.C. § 1981 when they terminated Powers based on his race.

176. As a direct and proximate result of Defendants' conduct, Powers has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT V: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

177. Powers restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

178. Throughout his employment, Powers was fully competent to perform his essential job duties.

179. Defendants treated Powers differently than other similarly-situated employees based on his race.

180. Defendants violated R.C. § 4112.02(A) *et seq.* by discriminating against Powers due to his race.

181. On or about September 15, 2020, Defendants terminated Powers without just cause.

182. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

183. Defendants terminated Powers based on his race.

184. Defendants violated R.C. § 4112.01 *et seq.* when they terminated Powers based on his race.

185. As a direct and proximate result of Defendants' conduct, Powers has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VI:  RETALIATION IN VIOLATION OF TITLE VII

186. Powers restates each and every prior paragraph of this complaint, as if it were fully restated herein.

187. As a result of Defendants' discriminatory conduct described above, Powers complained about the use of the N-word.

188. As a result of Defendants' discriminatory conduct described above, Powers complained about discriminatory discipline.

189. Subsequent to Powers's reporting of discrimination, Defendants gave Powers the Write-Up.

190. Subsequent to Powers's reporting of discrimination, Defendants gave Powers the Termination.

191. Defendants' actions were retaliatory in nature based on Powers's opposition to the unlawful discriminatory conduct.

192. Pursuant to Title VII, it is unlawful to retaliate against an employee for opposing unlawful discrimination.

193. As a direct and proximate result of Defendants' conduct, Powers suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VII:  RETALIATION IN VIOLATION OF TITLE VII

194. Powers restates each and every prior paragraph of this complaint, as if it were fully restated herein.

195. As a result of Defendants' discriminatory conduct described above, Powers complained about the use of the N-word.

196. As a result of Defendants' discriminatory conduct described above, Powers complained about discriminatory discipline.

197. Subsequent to Powers's reporting of discrimination, Defendants gave Powers the Write-Up.

198. Subsequent to Powers's reporting of discrimination, Defendants gave Powers the Termination.

199. Defendants' actions were retaliatory in nature based on Powers's opposition to the unlawful discriminatory conduct.

200. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

201. As a direct and proximate result of Defendants' conduct, Powers suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Powers respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i)     Requiring Defendants to abolish discrimination, harassment, and retaliation;

    (ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)   Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Defendants to restore Powers to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Powers for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Powers claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Gary Powers*

**JURY DEMAND**

Plaintiff Powers demands a trial by jury by the maximum number of jurors permitted.


*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)